UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>ARCHER USA, INC.; LENCO MOBILE, INC.,<br>                   Debtors. | CASE NO. C16-1110RAJ<br><br>BANKR. NO. 14-16659TWD<br><br>ORDER |
| CIRKELSELSKABET AF 16 JULI 2008 APS,<br><br>                   Defendant/Appellant,<br><br>    v.<br><br>ANTHONY NEUPERT, as Plan Administrator. | |

## I. INTRODUCTION

This matter comes before the Court on appeal pursuant to 28 U.S.C. § 158(a), (c)(1)(A) and Fed. R. Bankr. P. 8001 from the order issued on July 11, 2016 by the United States Bankruptcy Court for the Western District of Washington ("the Bankruptcy

Court"), Dkt. # 10 (Amended Brief). Appellee ("Archer") has filed a response, Dkt. # 11, and Appellant filed a reply, Dkt. # 12.

The Bankruptcy Court's order fixed Cirkelselskabet aft 16. Juli 2008 ApS's ("Cirkel") claim in the amount of $957,163.02. *Id.* In appealing the order, Cirkel argues that the Bankruptcy Court erred in offsetting Cirkel's claim against its debt because in this matter there is no independent right to setoff, as required by the United States Bankruptcy Code, and even if there were such a right, given the facts here, setoff is not permitted under Washington law and is disfavored by the equities. Dkt. # 10 at 14-23. Archer, in response, argues that both Washington law and the Plan Confirmation Order provide an independent right of setoff, and setting off Cirkel's debts against Archer's is both warranted and equitable in this case. Dkt. # 11 at 7-14. Having considered the papers submitted and the balance of the record, the court DENIES Cirkel's appeal for the reasons stated below.

## II. BACKGROUND

On September 6, 2014, Archer submitted a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. *See* Bankr. Case No. 14-16659TWD (Dkt. # 1) (lead case, substantively consolidated). In the proceeding that followed, Cirkel sought $4,009,957.02 in debt that Archer allegedly owed, consisting of $2,549,794.00 in principal, plus interest and fees. *Id.* (Dkt. #820).

The debts at issue in this appeal arise from a series of loans and a transaction that took place between 2006 and 2008. In 2006, Archer purchased iLoop Mobile Europe ApS (the "Danish Sub"), a company headquartered in Denmark that became Archer's

wholly owned subsidiary. Dkt. # 10 at 8; Dkt. # 11 at 3. Shortly after purchasing the Danish Sub, Archer began making loans to the Sub, loans that totaled $2.55 million by late 2007. Dkt. # 10 at 9; Dkt. # 11 at 3.

In 2007, Archer entered into negotiations with the Telenor Group, a Scandinavian company interested in purchasing the Danish Sub. Dkt. # 11 at 3. Throughout the negotiations, Telenor was explicit that it would only purchase the Danish Sub if the Archer debt was cleared. *Id.* As a result, on December 31, 2007, Archer and the Danish Sub entered into an agreement whereby the Danish Sub assigned its intellectual property to Archer for a price equal to the exact amount of the outstanding loans. Dkt. # 10 at 9; Dkt. # 11 at 3 (citing Case No. 14-16659TWD (Dkt. # 821)). The Telenor deal eventually fell through, but the loans and purchase of the intellectual property form the basis for the current disputed debts between Archer and Cirkel. Dkt. # 11 at 3.

On July 18, 2008, the Danish Sub filed for bankruptcy in Denmark and the bankruptcy estate was named Cirkelselskabet aft 16. Juli 2008 ApS ("Cirkel"). Dkt. # 10 at 9; *id.*, Ex. 10 at 19. Cirkel's bankruptcy proceedings took place in the Danish City Court in Copenhagen. *See id.*, Ex. 10. In its ruling, the Danish court recognized that Archer and the Danish Sub "had concluded an agreement before the bankruptcy in the form of an asset purchase agreement . . . [on] December 31, 2007." *Id.* at 19. But the Danish court went on to find (1) the transfer of the Danish Sub's assets to Archer was void because it constituted a fraudulent preference of the defendant to the detriment of the other creditors, *id.* at 35, (2) Archer could not simply return the software to the

Danish Sub, *id.*, and (3) Archer owed the Danish Sub $2,549,794.00 for the Sub's intellectual property, the amount previously agreed upon, *id.*

On December 14, 2015, the Bankruptcy Court confirmed the Plan of Reorganization (the "Plan") and appointed a plan administrator. Case No. 14-16659TWD (Dkt. # 648) (Order Confirming Modified Plan of Reorganization). The Plan, as confirmed, authorized the following:

> <u>Setoffs</u>. The Plan Administrator, on behalf of the Debtors, may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors may have against such creditor; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim that the Debtors may have against such creditor.

The Order confirming the Plan also provides:

> <u>Confirmation Order Controlling</u>. If there is any direct conflict between the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

*Id.* ¶¶ 16, 20. The Danish Trustee did not object to or appeal the Confirmation Order. Dkt. # 11 at 6; *see generally* Case No. 14-16659TWD (Dkt. ## 1-864).

On December 18, 2014, Cirkel[1] filed its proof of claim. Bankr. Case No. 14-16659TWD (Dkt. # 820) at 5. The plan administrator filed his objection to Cirkel's Claim on March 25, 2016, requesting that the Bankruptcy Court deny recognition of the Danish judgment, or, alternatively, authorize the plan administrator to offset the mutual claims between Archer and the Danish Sub. *Id.* After several rounds of briefing and two

---

[1] The creditor listed in the proof of claim is "Cirkelselskabet af 16. Juli 2008 ApS, *i.e.* the Danish Sub." Case No. 14-16659TWD (Dkt. # 820).

ORDER - 4

oral arguments, the Bankruptcy Court (1) recognized the Danish judgment but (2) allowed the plan administrator to offset Cirkel's claim of $4,009,957.02 against the principal amount of Archer's claim of $3,052,794.00, resulting in a net claim for Cirkel of $957,163.02. *Id.* at (Dkt. ## 873 at 35:20-25, 886 at 5:5-8). Cirkel appealed the Bankruptcy Court's judgment on July 19, 2016. *Id.* (Dkt. # 863).

### III. ISSUES ON APPEAL

Cirkel presents the following issues on appeal: (1) whether the Bankruptcy Court erred by holding that the Confirmed Chapter 11 plan created an independent right of setoff, Dkt. # 10 at 18-20; (2) whether the Bankruptcy Court erred in determining that Washington law permits setoff in this case, *id.* at 16-18, and; (3) whether the Bankruptcy Court erred by failing to properly address the equities of applying a setoff, *id.* at 20-23.

### IV. ANALYSIS

Pursuant to 28 U.S.C. § 158(a)(1), federal district courts have mandatory jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. *In re Frontier Properties, Inc.*, 979 F.2d 1358, 1362 (9th Cir.1992). On appeal from an order of the Bankruptcy Court, the district court reviews conclusions of law *de novo* and findings of fact for clear error. *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009).

In bankruptcy matters, federal district courts sit as appellate courts, and a district judge's job is analogous to that of an appellate court. *In re C.S. Crawford & Co.*, 423 F.2d 1322, 1325 (9th Cir. 1970); 28 U.S.C. § 158(c)(2). It is well-settled that issues raised on appeal are limited to those addressed below. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir.1999) ("[A]n appellate court will not consider issues not properly raised

before the [trial] court."); *In re Perez*, 30 F.3d 1209, 1214 (9th Cir.1994) (emphasizing that the reviewing court generally may not consider issues on appeal that "cannot be resolved without further development of the record" by a court below); *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546 n. 15 (9th Cir.1991) ("[A]n appellate court will not reverse a district court on the basis of a theory that was not raised below.").

**A.   Independent Right of Setoff**

Cirkel first argues that the Bankruptcy Court erred in allowing Archer and Cirkel to apply their mutual debts against one another—to "setoff" the debts—because the Confirmed Reorganization Plan did not grant such a right. Dkt. # 10 at 16. "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 19 (1995) (internal quotations omitted). Setoff in bankruptcy cases is governed by 11 U.S.C. § 553. *Newberry Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996). Yet Section 553 of the Bankruptcy Code merely "recognizes in bankruptcy a party's nonbankruptcy right to setoff mutual prepetition debts, but does not itself create such a right." *In re HAL, Inc.*, 196 B.R. 159, 161 (B.A.P. 9th Cir. 1996); *In re Gould*, 401 B.R. 415, 423 (B.A.P. 9th Cir. 2009). The right to setoff is typically a matter of state law. JOAN N. FEENY ET AL., BANKRUPTCY LAW MANUAL § 6:66 (5th ed. 2017). However, "in practice courts apply federal bankruptcy precedent and rarely refer to state law to determine whether mutuality exists." *In re Cty. of Orange*, 183 B.R. 609, 615 (Bankr. C.D. Cal. 1995). The party

seeking setoff has the burden of establishing an independent right of setoff under nonbankruptcy law. *HAL*, 196 B.R. at 161; *Cty. of Orange*, 183 B.R. at 615.

Here, the Bankruptcy Court recognized two independent sources of authority for the plan administrator's right to offset the debts between Cirkel and Archer: (1) paragraph 16 of the Plan Confirmation Order, and (2) Washington law. Case No. 14-16659TWD (Dkt. # 873) at 31:6-15; Dkt. # 11 at 7.

Cirkel appears to concede that Washington law provides an independent right of setoff in this case. *See* Dkt. # 12 at 6 ("[T]he proper standard of review is whether the Bankruptcy Court properly identified the standards under Washington setoff law to apply to the facts."). Cirkel also quotes several Washington cases that acknowledge a right to setoff under Washington law. *See* Dkt. # 10 at 15 (citing *Johnson v. City of Aberdeen*, 266 P. 707, 709 (Wash. 1928); *Johnson v. California-Washington Timber Co.*, 296 P. 159, 160 (Wash. 1931)). The Court agrees with the parties that Washington law provides an independent right of setoff; it is therefore unnecessary to determine whether the Plan also provides such a right.

**B.     Mutuality**

Cirkel next argues that under Washington law, setoff is inappropriate because the debts were not due to and from the same parties and Archer's debt arose after Cirkel initiated bankruptcy proceedings; in other words, the debts are not mutual. Dkt. # 10 at 15-18. Mutuality is the central requirement for offsetting debts. *HAL*, 196 B.R. at 161 (quoting *Boston and Maine Corp. v. Chicago Pac. Corp.*, 785 F.2d 562, 566 (7th Cir. 1986). "The Ninth Circuit has set forth a three-prong test for determining mutuality of

debts: (1) the debts must be in the same right; (2) the debts must be between the same individuals; and (3) those individuals must stand in the same capacity." *Los Angeles Cty. Employees Ret. Ass'n v. Towers, Perrin, Forster & Crosby, Inc.*, CV 01-1351DDP(CTX), 2002 WL 32919576, at *8 (C.D. Cal. June 20, 2002). Here, only the first and second prongs of the mutuality test are disputed.[2] *See* Dkt. # 10 at 15-18.

   1. <u>Same right</u>

In order to find mutuality, the debts must be owed in the same right. *Los Angeles Cty.*, 2002 WL 32919576, at *8 (C.D. Cal. June 20, 2002). "Courts have interpreted debts in the same right to mean that a 'pre-petition debt cannot offset a post-petition debt.'" *In re Ter Bush*, 273 B.R. 625, 629 (Bankr. S.D. Cal. 2002) (quoting *In re Westchester Structures, Inc.*, 181 B.R. 730, 739 (Bankr.S.D.N.Y.1995)). "Under section 553(a), each debt or claim sought to be offset must have arisen prior to filing of the bankruptcy petition." *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398-99 (9th Cir. 1996).

While Cirkel argues that "the debts are not between the same parties in the same right," it is clear that Cirkel conflates separate prongs of the Ninth Circuit's mutuality test. *See Los Angeles Cty.*, 2002 WL 32919576, at *8 (the Ninth Circuit's test for determining mutuality of debts requires that (1) the debts be in the same right and (2) the

---

[2] Parties do not operate in the same capacity "[w]here one party owes a fiduciary duty to the other, or has a claim for trust funds, and the other side's claim is a simple unsecured debt . . . ." *In re Ter Bush*, 273 B.R. 625, 629 (Bankr. S.D. Cal. 2002); *see also In re Luz Int'l, Ltd.*, 219 B.R. 837, 848 (B.A.P. 9th Cir. 1998) ("[W]here a debt arises from a fiduciary duty or is in the nature of a trust, courts have held that there is no mutuality for setoff purposes."). There are no such allegations in this case.

debts be between the same individuals).  The crux of Cirkel's argument is that the debts are between different parties; its argument that Archer's debt was only created during the Danish Sub's bankruptcy is inapplicable to the analysis of whether the debts are "in the same right," because, as noted by the Bankruptcy Court, "under Section 553(a), it is really the Archer petition date that controls the mutuality analysis." Dkt. # 10, Ex. 22 at 34; Dkt. # 10 at 17 (arguing that the Danish court "awarded judgment **to Cirkel,** NOT the Danish Sub") (emphasis in original); *see also infra* Section IV.B.2.  As Cirkel concedes, both debts here were created before Archer petitioned for bankruptcy on September 6, 2014.  Dkt. # 10 at 16.  The debts between Cirkel and Archer are therefore in the same right.  *Cty. of Orange*, 183 B.R. at 616 (debts are "in the same right" when both debts arise prepetition).

      2.  <u>Same parties</u>

The central argument in Cirkel's appeal is that the Danish Sub and Cirkel are not the same legal entities and therefore cannot be the same parties under Washington law. Dkt. # 10 at 15-18.  "The basic test of mutuality is not similarity of obligations but whether or not something is owed by each side." *In re Art Metal U.S.A., Inc.*, 109 B.R. 74, 78 (Bankr. D.N.J. 1989); *see also In re IML Freight, Inc.*, 65 B.R. 788, 793 (Bankr. D. Utah 1986) ("The creditor's debt must be owed to the estate of the debtor and the estate's debt must be owed to the creditor."); *In re 18th Ave. Dev. Corp.*, 12 B.R. 10, 11-12 (Bankr. S.D. Fla. 1981) (same).

The debts at issue in this case are owed to and from the same corporations. Cirkel—the name given to the bankruptcy estate—is the "same 'entity' which existed

before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have done absent the bankruptcy filing." *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984); *see also United States Through Small Business Administration v. Rinehart*, 88 B.R. 1014, 1016 (D.S.D. 1988), *rev'd on other grounds*, *Small Bus. Admin. v. Rinehart*, 887 F.2d 165 (8th Cir. 1989) ("[T]here is no authority for distinguishing between the capacity of parties in relation to each other outside of bankruptcy and that capacity following the filing of a bankruptcy petition.").

When the Danish Sub entered bankruptcy, its debts and assets became the property of the bankruptcy estate. *In re Cady*, 266 B.R. 172, 181 (B.A.P. 9th Cir. 2001); *Abele v. Phoenix Suns Ltd. P'ship (In re Harrell)*, 73 F.3d 218, 219 (9th Cir.1996) (per curiam) (bankruptcy estate "includes all legal or equitable interests of the debtor in property as of the commencement of the case"). So the Danish Sub's debts—including those arising from the loans from Archer—became Cirkel's, and Cirkel's assets include the amount Archer owes for the Danish Sub's intellectual property. Such mutual debt between parties is sufficient for a finding of mutuality. *In re Omne Staffing, Inc.*, 04-22316 (RTL), 2008 WL 182219, at *9 (Bankr. D.N.J. Jan. 16, 2008).

**C.    Equities**

Finally, Cirkel contends that the Bankruptcy Court erred by failing to address the equities of setoff in this case. Dkt. # 10 at 20-23. Moreover, Cirkel argues that permitting setoff is inequitable as it means that Cirkel receives pennies on the dollar from Archer. *Id.* "The right of off-set is permissive and rests in the discretion of the court,

applying general principles of equity." *Crowley Marine Servs., Inc. v. Vigor Marine LLC*, 17 F. Supp. 3d 1091, 1098 (W.D. Wash. 2014); *see also In re Medina*, 205 B.R. 216, 223 (9th Cir. BAP 1996) ("[T]he setoff right is an established part of our bankruptcy laws and should be enforced unless compelling circumstances require otherwise."); 9C AM. JUR. 2D *Bankruptcy* § 2687 (2017) ("[S]etoff should not be allowed when to do so would be inequitable, contrary to public policy, or inconsistent with bankruptcy law.").

First, contrary to Cirkel's contention, the Bankruptcy Court addressed the equities. *See* Case No. 14-16659TWD (Dkt. # 873) at 34 (denying Archer's request for interest on the grounds that it would be "inequitable"); *id*. at 32 (exercising equitable discretion and allowing the Danish Sub accrued interest for its proof of claim). Cirkel has provided no support for the argument that the Bankruptcy Court was somehow required to address the equities at greater length or in an alternative manner. *See* Dkt. # 10 at 20-23.

Second, Cirkel argues that because it will only receive a prorated share of Archer's estate, it "will lose the full amount of the Debtor's claim against the Danish Sub in the setoff ordered by the Bankruptcy Court and then only receive pennies on the dollar . . . ." Dkt. # 10 at 22. Cirkel supports this argument by citing the Ninth Circuit case, *In re De Laurentiis Entm't Grp. Inc*.: "A setoff is allowed as a defense to a claim brought *by the debtor* against a creditor . . . [otherwise] a creditor [] is in the worst of both worlds: it must pay its debt to the debtor in full, but is only entitled to receive a tiny fraction of the money the debtor owes it." 963 F.2d 1269, 1277 (9th Cir. 1992). But Cirkel has not cited any authority for the proposition that it is inequitable to allow setoff where it has been instigated by the debtor, as opposed to the creditor. As Archer correctly notes,

"[P]artial distributions are the norm in bankruptcy cases" and cannot be inherently inequitable. Dkt. # 11 at 14. Further, the Bankruptcy Court here offset the face values of the debts owed between Archer and Cirkel—"Apples were offset against apples"—a straightforward setoff that avoids "the absurdity of making A pay B when B owes A." *Id.*; *Citizens Bank of Md.*, 516 U.S. at 19. Accordingly, the Bankruptcy Court was well within its discretion in finding that setoff is equitable here.

## V. CONCLUSION

For all the foregoing reasons, the court DENIES Appellant's appeal. The Clerk of Court is DIRECTED to close this case.

Dated this 12th day of July, 2017.

The Honorable Richard A. Jones
United States District Judge